# IN THE COURT OF APPEALS OF IOWA

No. 20-0988
Filed May 12, 2021

IN THE MATTER OF THE ESTATE OF LEONARD F. DOLEZAL, Deceased.

**KENNETH F. DOLEZAL,**
        Plaintiff-Appellant,

**vs.**

**JONATHAN E. GALLAGHER, Executor of the LEONARD F. DOLEZAL ESTATE, ANNA MARIE DOLEZAL, ALEXANDRIA ERIN DOLEZAL, DAMON FRANK DOLEZAL, ST. WENCELAUS CATHOLIC CHURCH, IZAK CHRISTENSEN, ALEXANDRA MAREK, TREY FORSYTH and IOWA STATE UNIVERSITY FOUNDATION,**
        Defendants-Appellees.
_____

Appeal from the Iowa District Court for Linn County, Jason D. Besler, Judge.


A decedent's son appeals the denial of his motion to withdraw admissions concerning his father's mental capacity to execute a will and the grant of summary judgment to the executor.  **AFFIRMED.**


Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

Paul D. Burns and Janice J. Kerkove of Bradley & Riley PC, Cedar Rapids, for appellee Jonathan E. Gallagher.

Megan Kennedy Marty of Finley Law Firm, P.C., Des Moines, for appellee Anna Marie Dolezal.

Wayne E. Reames, Des Moines, for appellees Izak Christensen, Alexandra Marek, Trey Forsyth, and Iowa State University Foundation.

Alexandria Dolezal, Salt Lake City, Utah, self-represented appellee.

Damon Dolezal, Cedar Park, Texas, self-represented appellee.

St. Wenceslaus Catholic Church, Cedar Rapids, self-represented appellee.

Considered by Tabor, P.J., Ahlers, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**TABOR, Presiding Judge.**

Kenneth Dolezal contests his father's will, alleging the decedent suffered from delusions and was subject to undue influence. Finding Kenneth lacked standing to contest the will, the district court granted summary judgment for the executor. The court also decided the undisputed facts showed the decedent had "sufficient mental capacity" to execute the will. Kenneth now argues (1) the court abused its discretion in denying his motion to withdraw admissions under Iowa Rule of Civil Procedure 1.511 and (2) genuine issues of material fact precluded summary judgment. Because we find no abuse of discretion in the denial of Kenneth's motion to withdraw admissions and summary judgment was appropriate, we affirm.

## I. Facts and Prior Proceedings

Kenneth was the only child of Leonard and Evelyn Dolezal.[1] Evelyn died in 1999, and Leonard died in 2018. Kenneth and his three children were beneficiaries in Leonard's will.

Leonard signed his latest will in 2016. Although his gross estate topped eleven million dollars, Leonard bequeathed "the sum of five dollars" to Kenneth and each grandchild. Leonard left this explanation: "I made substantial gifts during my lifetime to my son . . . and to his children." With his remaining cash, Leonard left $500 "to each of the lay members of St. Wenceslaus Catholic Church" and $1000 each to three Iowa State University (ISU) students who appeared in a video thanking him and his wife, Evelyn, for their contribution to the renovation of an

---

[1] We will use first names to identify individuals who share the surname Dolezal.

auditorium on the campus.[2] Any residual assets went into a charitable trust that would distribute annually to the ISU Foundation (another defendant in Kenneth's petition) to fund undergraduate scholarships for students studying agriculture. That same year Leonard executed a codicil, designating Jonathan Gallagher as the new executor of his latest will and the trustee of his charitable trust. The district court admitted both the will and codicil to probate in April 2018.

In August 2018 Kenneth petitioned to set aside the 2016 will, alleging his father "was of unsound mind and suffered from delusions" when executing the document. Kenneth filed a separate lawsuit against the estate, demanding $66,300 for services he allegedly provided his father.[3] In August 2019, Kenneth amended his will-contest petition to include an older will, dated 2004, and to join those beneficiaries as new defendants. Kenneth also alleged in his amended petition that Leonard "was under undue influence exercised over and upon him" when executing the latest will.

Under the 2004 will, Kenneth would have inherited his father's "farm equipment, shop equipment and any Pickup Truck as well as the furniture located in the bedroom which had been [Kenneth's] bedroom while growing up." That earlier will also left Kenneth all the proceeds from the sale of Leonard's personal belongings, household items, and other tangible property. As directed by the 2016 will, the estate sold those items at a public auction for $20,747.

---

[2] Kenneth named the church and the ISU students as defendants.
[3] That action is still pending after the district court denied the executor's motion for summary judgment.

In October 2019, the executor moved for summary judgment in the will contest after Kenneth failed to respond to the executor's request for admissions during discovery. In an accompanying statement of undisputed facts, the executor claimed the eighteen unanswered requests were deemed admitted under Iowa Rule of Civil Procedure 1.510(2). Relying on those admissions, the executor asked for summary judgment because (1) "the undisputed material facts demonstrate that Leonard *was* of sound mind and body when he executed the 2016 Will and First Codicil" and (2) Kenneth lacked standing to contest the will because he could not show that he would suffer any injury if the 2016 will was set aside.

In resisting summary judgment, Kenneth conceded his failure to timely respond to the executor's requests led to those matters being deemed admitted. *See* Iowa R. Civ. P. 1.510(2). But he argued those admissions did not address his claims of insane delusion or undue influence. Kenneth also moved to withdraw his admissions under Iowa Rule of Civil Procedure 1.511. He alleged his attorney did not realize he failed to answer the requests until the executor moved for summary judgment. He asked the court to withdraw the admissions that stated his father had "sufficient mental capacity" to execute the 2016 will as well as three prior wills dated 2004, 2001, and 2000. In an attachment, Kenneth provided late responses to fourteen of the executor's requests but declined to admit or deny the four requests addressing his father's mental capacity.

In February 2020, the district court denied Kenneth's motion to withdraw. And based on the executor's statement of undisputed facts, the court granted the motion for summary judgment. Kenneth appeals those rulings.

## II. Scope and Standards of Review

We review the denial of a motion to withdraw admissions for correction of legal error. *See Double D Land & Cattle Co. v. Brown*, 541 N.W.2d 547, 549 (Iowa Ct. App. 1995).[4] Because rulings under Rule 1.511 are discretionary, we will reverse only if we find an abuse of discretion. *Id.* A court abuses its discretion if it bases its ruling on unreasonable grounds. *Id.*

We also review the grant of summary judgment for correction of legal error. *In re Estate of Graham*, 690 N.W.2d 66, 69–70 (Iowa 2004). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). We view the record, and make all reasonable inferences from the undisputed evidence, in the light most favorable to Kenneth. *See Graham*, 690 N.W.2d at 70.

## III. Analysis

### A. Motion to Withdraw Admissions

Kenneth argues the district court should have allowed him to withdraw his admissions by exercising its discretion under Rule 1.511. He relies on two cases, *Allied Gas*, 332 N.W.2d at 879, and *Allied Gas & Chemical Co. v. Federated Mutual*

---

[4] *Double D Land* considered a related issue of whether the district court should have permitted late responses to a request for admissions. But the same standard of review applies to rulings on withdrawal of admissions. *See Allied Gas & Chem. Co. v. Federated Mut. Ins. Co.*, 332 N.W.2d 877, 879 (Iowa 1983) (finding no distinction between motions to file an untimely response and motions to withdraw an admission). Here, the court accepted Kenneth's late responses but denied the request to withdraw the four default admissions.

*Insurance Co.*, 365 N.W.2d 26, 31 (Iowa 1985), to "illustrate the significance of the proximity of trial in the Court's exercise of discretion in allowing withdrawal." Combining those authorities, Kenneth claims withdrawal was warranted because "the trial was no longer imminent and there was minimal prejudice to the Executor."

To start, Kenneth concedes he missed the thirty-day deadline to respond to the executor's request for admissions. Thus, he does not dispute that those facts were "conclusively established in the pending action." Iowa R. Civ. P. 1.511. Instead, he relies on the permissive language that follows:

> Subject to the provisions of rule 1.604 governing amendment of a pretrial order, the court *may* permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining that party's action or defense on the merits.

(Emphasis added.) Under this provision, the district court may allow a party to withdraw admissions after the deadline if two things are true: (1) a late filing of responses would promote presentation of the action on the merits; and (2) the party who requested the admissions fails to show prejudice. *See Double D Land*, 541 N.W.2d at 550.

The parties focus on the second prong: whether the executor established prejudice. The district court answered yes based on the timing of Kenneth's motion. The court found that Kenneth knew or should have known about the unanswered requests after the executor served two motions to compel in September 2019. Yet Kenneth did not seek to withdraw or correct those admissions until November—twenty-nine days after the executor moved for

summary judgment. In assessing that delay's prejudicial effect, the court credited the executor's assertion that it "would have explored more information in discovery" had Kenneth objected sooner. The court also noted that Kenneth still refused to answer or object to the four admissions regarding his father's mental capacity.[5]

After reviewing the relevant case law, we find no abuse of discretion. Kenneth incorrectly asserts that proximity to trial is the crucial factor under the *Allied Gas* decisions. Contrary to his assertion, the trial date was not the be-all and end-all. Rather, the supreme court relied on a broader principle that prejudice may appear "where a party is suddenly required to prove matters otherwise admitted." *Allied Gas*, 332 N.W.2d at 880. The court cited other jurisdictions that properly denied withdrawal based on prejudice with no reference to a trial date. *See id.* (collecting cases). The court described two Pennsylvania cases that found prejudice "where summary judgment otherwise would be entered based on issues deemed admitted" and "in time spent preparing for summary judgment based on issues deemed admitted." *Id.* (citing *Innovate, Inc. v. United Parcel Serv., Inc.*, 418 A.2d 720, 724 (Pa. Super. Ct. 1980); *Commonwealth v. Diamond Shamrock Chem. Co.*, 391 A.2d 1333, 1336 (Pa. Commw. Ct. 1978)). Applying that principle, the court decided the executor would be prejudiced by withdrawal. That prejudice stemmed from the executor's reliance on Kenneth's admissions to support the motion for summary judgment. Because withdrawal of the admissions

---

[5] Rather than admit or deny those requests for admissions, Kenneth asserted the requests did not properly set forward the standard for will contests and did not apply to his claims of delusion and undue influence.

could dictate the outcome of the motion, the executor offered sufficient proof of prejudice.

And even if the executor had not proven prejudice, it remained within the court's discretion to refuse withdrawal. *See* Iowa R. Civ. P. 1.511. Kenneth insists his attorney's "failure to respond was inadvertent," suggesting the court should have considered the reason for the delay as a mitigating factor. But our supreme court rejected that argument. *See Allied Gas*, 332 N.W.2d at 880*.* Kenneth gives us no reason to second-guess the district court's judgment. *See id.* ("The question in this appeal is not whether we would permit the untimely responses to be filed. The question is whether the district court abused its discretion in refusing to permit them to be filed."). For these reasons, we affirm the denial of Kenneth's motion.

## B. Motion for Summary Judgment

Next Kenneth argues even if he cannot withdraw his admissions, the executor failed to show that there was no genuine issue of material fact as to his claims of insane delusion or undue influence. Kenneth contends mental capacity to execute a will is not the standard for either of those claims.

The executor disagrees, insisting the district court, when granting summary judgment, properly considered Kenneth's admission that his father had sufficient mental capacity to execute the 2016 will. The executor also defends the district court's determination that Kenneth "failed to introduce any *evidence* into the summary judgment record that Leonard had in fact suffered from insane delusions."

Before resolving the parties' dispute over Leonard's mental capacity, we take a detour to discuss standing. The general test for standing has two elements;

a plaintiff must (1) have a specific personal or legal interest in the litigation and (2) be injuriously affected. *See Godfrey v. State*, 752 N.W.2d 413, 418 (Iowa 2008). But more specifically, under the probate code, "[a]ny interested person" may petition to set aside a will. Iowa Code § 633.308; *see In re Estate of Herm*, 284 N.W.2d 191, 200 (Iowa 1979) (holding beneficiaries under a prior will had standing to contest a subsequent will).

Using the general test, the executor urged the district court to find Kenneth lacked standing because "even if he prevailed in setting aside Leonard's 2016 Will and First Codicil he will have incurred no injury." The executor's intricate argument went like this:

> Under the doctrine of dependent revocation, if the 2016 Will and First Codicil was set aside, Leonard's 2004 [Will] and seven Codicils (collectively "2004 Will") would govern. Under the 2004 Will, Kenneth would receive $20,797 from Leonard's estate, representing the proceeds from the sale of Leonard's tangible property. Kenneth is also a beneficiary under Evelyn Dolezal's Will. Evelyn was Leonard's wife and Kenneth's mother. She predeceased Leonard. Under the terms of Evelyn Dolezal's Will, the $20,797 in proceeds Kenneth would receive under Leonard's 2004 Will would reduce the proceeds Kenneth will receive under the Evelyn Dolezal Trust by that same amount. The net proceeds to Kenneth is not affected.

The district court embraced that position. It held "the Executor's Motion for Summary Judgment should be granted, as a matter of law, due to [Kenneth's] lack of standing to challenge the Will of 2016 and First Codicil of 2016, given the undisputed facts in this case demonstrate he suffers no injury from these documents being probated."[6]

---

[6] The court also dismissed the first count of Kenneth's petition (insane delusion) for the "additional reason" that "the undisputed facts establish Leonard had sufficient mental capacity to execute the Will of 2016 and First Codicil of 2016." The court then granted summary judgment on the petition's second count

Despite the court's holding, Kenneth fails to argue standing in his opening brief. Citing that omission, the executor contends Kenneth abandoned any claim that he would be injuriously affected by the probate of his father's 2016 will. For the first time in his reply brief, Kenneth addresses standing. He questions the doctrine of dependent relative revocation, the executor's characterization of the prior wills, and "how the offset would work." But we cannot consider issues raised for the first time in a reply brief. *Young v. Gregg*, 480 N.W.2d 75, 78 (Iowa 1992).

That said, we choose not to resolve this appeal on standing. Instead, we affirm the grant of summary judgment on the alternative basis that Kenneth did not generate a genuine issue of material fact on either his insane delusion or undue influence claims. *See Deeds v. City of Marion*, 914 N.W.2d 330, 350 n.9 (Iowa 2018) (allowing appellate court to uphold summary judgment on any ground supported by the record and urged by the movant in the district court and on appeal). With that set up, we turn to Kenneth's claims of insane delusion and undue influence.

To begin, an insane delusion is "a belief which has no basis in reason and which cannot be dispelled by argument." *See Hult v. Home Life Ins. Co. of N.Y.*, 240 N.W. 218, 221 (Iowa 1932) (citation omitted). "Insane delusions show a diseased condition of mind, and will render invalid a will which is the direct result

---

(undue influence) only on standing, believing the executor did not urge any other ground. But the court did find "no evidence naming an individual that provided undue influence to the Decedent as evidence to this claim." On appeal, the executor contends that he *did* assert Kenneth's "failure to offer evidence to rebut the legal presumption" as a basis to dismiss the undue influence count. We agree with the executor that we can consider Kenneth's failure to provide any evidence to back his claim of undue influence as an alternative ground for the grant of summary judgment.

of such delusions." *In re Estate of Koll*, 206 N.W. 40, 43 (Iowa 1925). These older cases equate an "insane delusion" with "monomania," described as "insanity upon a particular subject" or "a single delusion of the mind."[7] *Firestine v. Atkinson*, 218 N.W. 293, 294 (Iowa 1928) (citation omitted). This concept often arises when a party contesting a will alleges "the testator wrongly believes that those who would naturally be the objects of his bounty are hostile to him." *See id.* at 295. But

> the fact that the testator believes that his relatives have ill-treated him, or that they are inimical to him . . . and for that reason leaves his property to strangers, does not constitute an insane delusion, unless it appears that his belief was wholly without any basis whatever, and that the testator obstinately persisted in it against all arguments which may have been employed to dissuade him.

*Hult*, 240 N.W. at 221.

For two reasons, Kenneth's claim of insane delusion could not survive the executor's motion for summary judgment. The first reason links back to his deemed admission: "Leonard Dolezal had sufficient mental capacity to execute his 2016 Will and First Codicil." Yet, defying semantics, Kenneth argues that the phrase "sufficient mental capacity" differs from the requirement of a "sound mind" to dispose of property by a will under Iowa Code section 633.264. To bolster his argument, he cites this treatise passage:

> In some cases, the testator may possess sufficient general mental capacity to execute a will, but nonetheless be so deranged that his will, or that portion thereof affected by his derangement, should not be given effect. In some cases, the contestant must allege and prove that testator acted under an insane delusion at the time of executing his will which affected the dispositions made therein.

---

[7] More recently we have cast doubt on the continuing vitality of the concept of insane delusions. *See In re Estate of Hetrick*, No. 11-1702, 2012 WL 3860749, at *3 n.1 (Iowa Ct. App. Sept. 6, 2012) (citing Bradley E.S. Fogel, *The Completely Insane Law of Partial Insanity: The Impact of Monomania on Testamentary Capacity*, 42 Real Prop. Prob. & Tr. J. 67, 68–69 (2007)).

1 Sheldon F. Kurtz, *Kurtz on Iowa Estates: Intestacy, Wills and Estate Administration* § 4.44, at 196 (3d ed. 1995). The problem with Kenneth's argument is that Professor Kurtz is not saying that an insane delusion is distinct from mental incapacity. Rather, he's saying an insane delusion is a *specific kind* of mental incapacity (or derangement) that affects the testator's ability to dispose of their property. Delusions may be one of many manifestations of mental illness that bear on testamentary capacity. *See In re Estate of Dankbar*, 430 N.W.2d 124, 130 n.1 (Iowa 1988). Contrary to Kenneth's argument, the admission defeats his insane delusion claim as a matter of law.

But even if Kenneth were right about the distinction between mental capacity and insane delusions, another basis supported summary judgment. That second basis was the lack of any proof from Kenneth to support his claim that Leonard suffered from an insane delusion when he executed the 2016 will.[8] Without that proof, we are left with the presumption of Leonard's mental capacity. *In re Estate of Huston*, 27 N.W.2d 26, 28 (Iowa 1947). As the party contesting the will, Kenneth had the burden to offer evidence showing his father's insane delusion. *See In re Estate of Klein*, 42 N.W.2d 593, 598 (Iowa 1950).

That burden exists even at the summary judgment stage. After the executor moved for summary judgment, which was supported by the presumption of mental capacity, Kenneth could not rest on "mere allegations or denials in the

---

[8] In his resistance to the executor's motion for summary judgment, Kenneth claimed he provided evidence about his father's delusions in his answers to the interrogatories. Those answers are not in the appendix nor otherwise part of the appellate record.

pleadings." *See* Iowa R. Civ. P. 1.981(5). Instead, he had to lift up specific material facts, backed by competent evidence, to prove a genuine issue for trial. *See In re Estate of Franken*, 944 N.W.2d 853, 858 (Iowa 2020). Kenneth failed to meet his burden on the claim of insane delusion.

A similar fate befalls his second claim, undue influence.[9] Like mental capacity, we presume freedom from undue influence. *In re Will of Pritchard*, 443 N.W.2d 95, 98 (Iowa Ct App. 1989). And Kenneth offers no facts in resisting summary judgment to rebut that presumption. Indeed, as the executor points out, Kenneth never identifies who allegedly exerted undue influence on Leonard. "Mere suspicion, surmise, conjecture, or speculation is not enough to warrant a finding of undue influence, but there must be a solid foundation of established facts upon which to rest an inference of its existence." *Id.* On this record, we find the district court could have granted summary judgment based on Kenneth's failure to generate a triable issue of fact on his claim of undue influence.

**AFFIRMED.**

---

[9] Unlike the insane-delusion count, we do not consider Kenneth's admissions to his father's mental capacity as a basis for summary judgment on the undue-influence count. *But see In re Estate of Cory*, 169 N.W.2d 837, 843 (Iowa 1969) (explaining that "issue of undue influence in a will contest cannot be separated from that of testamentary capacity" (citation omitted)). Rather, we hold that Kenneth fails to rebut the legal presumption that a testator acts under his own free will.